TARA K. McGRATH
United States Attorney
MATTHEW J. SUTTON
Assistant United States Attorney
Illinois State Bar No. 6307129
MIKAELA L. WEBER
Assistant United States Attorney
California State Bar No. 279391
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8941
Email: Matthew.Sutton@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 21-cr-02960-AGS |
| v. | Date: January 13, 2025<br>Time: 9:00 a.m. |
| KEITH OCTAVIO RODRIGUEZ PADILLA (19), | The Honorable Andrew G. Schopler |
| Defendant. | **UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Matthew J. Sutton and Mikaela L. Weber, Assistant U.S. Attorneys, hereby files its Sentencing Memorandum.

## I.

## STATEMENT OF THE CASE

On October 19, 2021, a federal grand jury in the Southern District of California returned a five-count indictment charging Keith Octavio RODRIGUEZ Padilla, aka TALIBAN (D19) and twenty-nine co-defendants with multiple offenses, including Conspiracy to Import Cocaine, in violation of 21 U.S.C. §§ 952, 960, and 963, Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 846, Conspiracy to Launder

Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(2)(A), (a)(2)(B)(i) and (h), and Conspiracy to Smuggle Goods, in violation of §§ 371 and 554(a). On October 19, 2023, RODRIGUEZ Padilla plead guilty to a superseding information containing the same charges. RODRIGUEZ Padilla is currently scheduled for sentencing on January 13, 2025.

## II.

## STATEMENT OF FACTS

### A. Case Overview

OCDETF Operation Baja Metro is a San Diego Strike Force joint investigation led by Homeland Security Investigations (HSI), the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), and the Internal Revenue Service (IRS) targeting the leadership elements, lieutenants, sources of supply, distributors, facilitators, money launderers, and firearms traffickers connected with the VALENZUELA Transnational Criminal Organization. The VALENZUELA TCO is a significant component of the Sinaloa Cartel and investigators believe that the TCO is currently one of the largest importers of cocaine into the United States. The TCO sources cocaine and other controlled substances (including fentanyl, heroin, methamphetamine, and marijuana) from South America and Mexico, transports the drugs to multiple locations along the U.S. / Mexico border using commercial trucking companies, smuggles the narcotics into the country, and distributes them throughout the U.S. The TCO then smuggles the bulk cash proceeds from its drug trafficking activities back to the TCO's leadership in Mexico.

Throughout 2020, the VALENZUELA TCO, including one of its leaders, Jorge Alberto Valenzuela Valenzuela ("JORGE"), was engaged in violent conflict with another component of the Sinaloa Cartel led by Ivan Archivaldo Guzman-Salazar. During this conflict, JORGE's brother and previous TCO leader, Gabriel Valenzuela-Valenzuela (GABRIEL) was killed. This led the VALENZUELA TCO to procure large quantities of firearms, ammunition, tactical gear, armored vehicles, and ballistic vests. A considerable number of these munitions were sourced from within the United States and clandestinely smuggled into Mexico, using numerous arms trafficking networks. In some instances, the TCO used its

2

21-cr-02960-AGS

own trafficking networks into the U.S. to traffic the munitions into Mexico. In other instances, the TCO relied on the trafficking networks of the arms dealers to move the firearms and ammunition from the United States into Mexico.

As the investigation progressed in 2020, agents began to target private jet aircrafts operated by the TCO. In October 2020, while tracking the movement of one of the aircrafts and conducting surveillance at every stop across the county, agents learned that JORGE was onboard. Agents then coordinated with HSI Boston to arrest JORGE. During his arrest, agents seized fifteen cellular telephones belonging to JORGE. On November 5, 2020, a federal grand jury sitting in the Southern District of California returned an indictment charging JORGE with a drug trafficking offense (in case number 20-cr-3515-AGS). JORGE is currently in custody in the Southern District of California.

Following JORGE's arrest, on November 20, 2020, DEA and HSI agents initiated surveillance at a commercial truck yard being operated by the Valenzuela TCO in the Otay Mesa area of San Diego. Agents ultimately obtained a search warrant for this truck yard and during the search, seized approximately $3,078,880 in bulk U.S. currency, approximately 685 kilograms of cocaine, 24 kilograms of fentanyl, and a pickup truck with a trap gas tank the size of half the truck bed were discovered. The truck yard contained numerous tractors and trailers, along with numerous other vehicles. Inside one of the trailers, agents seized approximately 20,000 rounds of .50 caliber ammunition, along with approximately 427 ballistic plate carriers, approximately 1,000 rounds of .40 caliber ammunition, and approximately 104 magazines for .50 caliber ammunition. Agents also arrested three Valenzuela TCO lieutenants during this operation, namely Jesus BURGOS-Arias, Juan ALATORRE Venegas, and Jose YEE Perez and seized dozens of cellular telephones belonging to them.

Following this significant seizure, in late 2020 and early 2021, agents executed four additional search warrants on commercial properties and warehouses in San Diego belonging to or being utilized by the TCO. Additional narcotics, firearms, bulk cash, and evidence were seized from those searches, along with the seizure of approximately

$1,032,646 in personal assets and vehicles. On February 12, 2021, a federal grand jury sitting in the Southern District of California returned an superseding indictment charging JORGE, BURGOS-Arias, ALATORRE, and YEE with drug trafficking and money laundering offense (in case number 20-cr-3515-AGS). All defendants in this case have subsequently pled guilty and are awaiting sentencing.

On October 19, 2021, a federal grand jury sitting in the Southern District of California returned a five-count indictment charging 30 members of the VALENZUELA TCO with multiple drug trafficking, money laundering and firearms trafficking offenses (in case number 21-CR-2960-AGS). Beginning in late October 2021, agents conducted a coordinated takedown of these TCO members, including lead defendant and sister of JORGE, Wuendi Yuridia Valenzuela Valenzuela (WUENDI). WUENDI was arrested in early November 2021, while appearing to flee her home and quickly relocate her family. During the multi-week takedown, agents seized approximately $863,899 in drug proceeds, $5,538,137 in watches, and multiple vehicles and cellular telephones belonging to TCO members.

On June 30, 2022, a federal grand jury sitting in the Southern District of California returned a four-count indictment charging an additional 50 members of the VALENZUELA TCO with multiple drug trafficking, money laundering and firearms trafficking offenses (in case number 22-CR-1504-AGS).

During this long-term investigation, agents have and continue to analyze dozens of seized telephones and uncover the full scope of the TCO's operations. Despite their extensive use of encrypted communications applications like Threema, WhatsApp, and Seecrypt, investigators have recovered tens of thousands of messages, including photos, videos, and voice notes. These messages show, in painstaking detail, the importation of thousands of kilograms of controlled substances (primarily cocaine but also methamphetamine and fentanyl) into the Southern District of California for distribution across the United States, as well as the collection of millions of dollars in drug proceeds which were smuggled into Mexico.

4

21-cr-02960-AGS

### B. Keith Octavio RODRIGUEZ Padilla, aka TALIBAN (D19)

During the investigation, agents identified Keith Octavio RODRIGUEZ Padilla as a as an firearms and ammunitions broker for the TCO.

For example, during the November 20, 2020, seizure in Otay Mesa, agents seized a bill of lading (BOL) / shipping manifest for the roughly 20,000 rounds of .50 caliber ammunition that were found during the search.



The BOL detailed the shipper as Tactical Manufacturing Inc. (TMI50BMG) in Warren, OR. TMI is a loader of .50 caliber ammunition, which generally requires the customer to produce their own components. In speaking with the CEO and onsite manager for TMI, agents discovered that the purchaser of the .50 caliber ammunition seized from the Otay Mesa warehouse was RODRIGUEZ Padilla.

The consignee / receiver of the shipment of ammunition from TMI was listed as IRK Inc. in San Bernardino, CA. The person from IRK was listed as Keith RODRIGUEZ Padilla. The phone number listed for RODRIGUEZ Padilla on the BOL is registered to RODRIGUEZ, and has so been since November 2015, and is in contact with a phone number used by another senior member of the TCO. In addition, that senior member of the TCO and

RODRIGUEZ have international crossings with the same narcotics broker through Southern California POEs.

During a subsequent search of RODRIGUEZ Padilla's telephone, agents recovered multiple photographs and videos of the Defendant holding various high-powered weapons, some with drum style magazines, and driving around in the United States with weapons inside his vehicle. Some of these photographs are included below.



# III.

# MEMORANDUM OF POINTS AND AUTHORITIES

A.  **Guidelines Calculations**

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and are to be considered in conjunction with the factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence.

As an initial matter, under USSG § 3D1.2(c), Counts 1 through 4 are grouped together and Count 1, the conspiracy to import cocaine count, produces the highest base offense level. The underlying offense (in Count 1) is the conspiracy to import 450+ kilograms of cocaine, so under USSG § 2D1.1(c)(1), the base offense level is 38. Because the Defendant possessed firearms during the offenses, the parties are jointly recommending a two-level upward adjustment pursuant to § 2D1.1(b)(1). The Defendant is not eligible for safety-valve. Next, the parties are jointly recommending a two-level upward adjustment under USSG § 2S1.1(b)(2)(B) because the Defendant was convicted under Section 1956 (Count 3). The parties also agreed to recommend a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(b), and a four-level downward departure under USSG § 5K2.0 for the Defendant's speedy resolution of the case and complete appellate waiver.

The adjusted offense level is 35 and, as indicated in the presentence report, Defendant has 10 criminal history points but is also a career offender, placing him in Criminal History Category VI, resulting in a Guideline range of 240 to 240 months (adjusted based on the statutory maximum).

For the reasons set forth below, the United States recommends the Court sentence the Defendant to 240 months in custody and 5 years of supervised release on Counts 1-3 concurrently (and 3 years of supervised release on Count 3 concurrently). In addition, the United States recommends 60 months on Count 4 (concurrent to Counts 1-3) and 3 years of supervised release (concurrent to Counts 1-3). Therefore, in total, the United States is requesting a sentence of 240 months in custody for the Defendant.

## B. The Sentencing Factors

Section 3553 states that the Court should consider the nature and circumstances of the offense and the characteristics of the defendant. In addition, it states that the Court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). The Court shall also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Upon applying these sentencing factors to this case, a sentence of incarceration of 240 months is appropriate and not greater than necessary to comply with the goals outlined in 18 U.S.C. § 3553, et seq.

### 1. *The nature and circumstances of the offense, the need for just punishment and to reflect the seriousness of the offense.*

The Defendant's conduct should not be taken lightly. The majority of firearms and ammunition trafficked into Mexico—including high caliber and assault weapons—are shipped from the United States. The rise of privately made firearms, or "ghost guns," has only made this problem more acute. These weapons and ammunition empower drug cartels to intimidate local communities, challenge state authority, and expand their deadly drug trade back into the United States. Tragically, some of these weapons and ammunition have been used against Mexican security forces bravely seeking to capture cartel leaders responsible for so much death and destruction both in Mexico and the United States.

In this case, the Defendant worked with a U.S. based TCO supervisor to supply the organization with thousands of rounds of .50 caliber ammunition for exportation to Mexico. As a three-time felon (including a prior conviction for illegally possessing ammunition), Defendant know that he was prohibited from purchasing ammunition and exporting it to Mexico on behalf of the TCO. The TCO, in turn, would use this ammunition to attack

Mexican security forces, rival cartel members, and innocent civilians. In summary, the Defendant played a vital role supplying high-powered military grade ammunition to the TCO, which in turn, deployed its firearms and ammunition to protect their criminal enterprise, which distributed a staggering quantity of cocaine in the United States and moved tens of millions of dollars in drug proceeds back to the TCO in Mexico.

### 2.  *The need for deterrence and to promote respect for the la*

Deterrence and respect for the law are important in this case for two reasons. First, helping to traffic firearms and ammunition to a major Mexican drug cartel is a serious offense, for which there must be a consequence. The law does not tolerate those who perpetuate the trafficking of firearms and ammunition from the United States to Mexico and within Mexico.

Second, specific deterrence is needed because the Defendant has a long-standing and serious criminal history (he is a career offender). His career as a criminal began in 2003, when the Defendant was just 18 years old. In 2003, Defendant sustained his first conviction for vehicle tampering. PSR ¶ 57. In 2004, Defendant was convicted of felony domestic violence. PSR ¶ 58. Undeterred by the sentence he received, the Defendant repeatedly violated probation in this case. Defendant returned to criminal activity in 2010 and was convicted for being a felon in possession of ammunition. PSR ¶ 59. Just months later, Defendant sustained another felony domestic violence conviction, in which he was sentenced to 24 months in custody. PSR ¶ 60. Moreover, prior to the indictment in this case, Defendant was arrested and is facing serious charges in San Bernardino County for illegally possessing multiple weapons as well as a marijuana grow at his residence. PSR ¶ 70-72. Thus, specific deterrence is certainly warranted as to the Defendant, as well as the general deterrence to others in the community, who may be tempted by easy money and a better lifestyle for relatively little work as a firearms and ammunition trafficker.

### 3.  *The history and characteristics of the defendant.*

The Court must also consider the history and characteristics of the Defendant, which do not appear to suggest any significant mitigating factors. The Defendant is a healthy 38-

year-old U.S. citizen with a high school education. He did not report any serious substance abuse issues or serious mental health conditions. Defendant also reported steady employment prior to his arrest in this case. Despite these factors, the Defendant decided to work closely with the TCO and supply them with deadly ammunition.

## IV.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court sentence the Defendant to a total term of two hundred and forty months of custody to be followed by five years of supervised release. In light of the nature and circumstances of the offenses, the recommended sentence is appropriate. Such a sentence would account for the nature of the Defendant's serious crimes and deter the Defendant and other firearms and ammunition traffickers, who seem to treat jail as a business risk, from trafficking dangerous weapons and ammunition from the United States to Mexico. Accordingly, the United States respectfully requests that the Court impose a total term of two hundred and forty months of custody to be followed by five years of supervised release.

DATED: January 6, 2025

Respectfully submitted,

TARA K. McGRATH
United States Attorney

/s/ Matthew J. Sutton
MATTHEW J. SUTTON
MIKAELA L. WEBER
Assistant United States Attorney